JS 10

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 6393 | DATE | 5/17/2001 |
| CASE TITLE | Cardenas vs. RIA Telecommunications, Inc. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Enter MEMORANDUM, OPINION AND ORDER: Plaintiff's motion for default judgment [37-1] is denied. Defendant's motion to dismiss [33-1,2] is granted, and this case is dismissed with prejudice. This order is final and appealable.**

(11) ■ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | number of notices | |
| | No notices required. | | |
| | Notices mailed by judge's staff. | date docketed | |
| | Notified counsel by telephone. | | 53 |
| ✓ | Docketing to mail notices. | docketing deputy initials | |
| ✓ | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |
| | | FILED FOR DOCKETING 01 MAY 17 PM 4:36 | date mailed notice |
| TSA | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GERARDO CARDENAS, individually and
and on behalf of all others similarly situated,

    Plaintiff,

v.

RIA TELECOMMUNICATIONS, INC., a
Delaware corporation and RIA
TELECOMMUNICATIONS OF ILLINOIS,
INC., an Illinois corporation,

    Defendants.

Judge Wayne R. Andersen

Case No. 00 C 6393

## MEMORANDUM OPINION AND ORDER

Gerardo Cardenas ("Cardenas") initiated a class action against defendants Ria Telecommunications ("Ria") and Ria Telecommunications of Illinois ("Ria Illinois") for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the California Unfair Competition Law and the California Consumer Legal Remedies Act. Plaintiff has moved for a default judgment under Fed. R. Civ. P. 55(a). Both defendants have moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6). For the reasons set forth in this memorandum opinion and order, the plaintiff's motion for default judgment is denied. The defendant's motion to dismiss is granted.

## BACKGROUND

The facts are taken from the plaintiff's Complaint, which we deem true for purposes of these motions. Ria conducts wire transfers throughout the United States and to various other countries, including Mexico. Ria provides these services through retail store agents, some of whom are independent and others which are owned by Ria. Ria Illinois provides services solely through

independently owned retail agents in Illinois. To provide international service to Mexico, Ria contracts with various Mexican banks and other independent businesses to provide locations for the recipient to pick up the money. Ria Illinois uses and pays for Ria's services to process orders and complete transactions to Mexico.

On or about April 1, 1999, Cardenas saw an advertisement about Ria's services at a currency exchange that was one of Ria's agents. Cardenas arranged with the agent to have a sum of money transmitted to Mexico. On or about May 3, 1999, he entered into a similar transaction with the same currency exchange. At the time of both transactions, the advertisement represented that the transmittal of money to Mexico could be made for a flat fee of ten dollars. Cardenas alleges that on both occasions he was told of a single rate at which United States dollars are converted to pesos. Cardenas further alleges that Ria converted the currency at an undisclosed, more favorable wholesale rate and kept the difference as profit.

## DISCUSSION

Plaintiff has moved for a default judgment under Fed. R. Civ. P. 55(a), alleging that defendants failed to file a responsive pleading within ten days pursuant to Fed. R. Civ. P. 12(a)(4)(A). We find evidence that the parties had agreed upon an extension for filing a response in order to have a status hearing in this Court. We further find that the defendants' responsive motion, the motion to dismiss, was filed in a timely manner in accordance with the agreement between the parties.

On the defendants' Rule 12(b)(6) motion, all well-pleaded allegations in the Complaint must be credited, with all reasonable inferences drawn in the plaintiff's favor. See, e.g., Sherwin Manor Nursing Center, Inc. v. McAuliffe, 37 F.3d 1216, 1219 (7th Cir. 1994). Dismissal is proper only if

it is clear from the Complaint that no set of facts consistent with its allegations would entitle the plaintiff to relief. Hishon v. King & Spalding, 467 U.S. 69, 73, 81 L.Ed. 2d 59, 104 S.Ct. 2229 (1984), citing Conley v. Gibson, 355 U.S. 41, 45-46, 2 L.Ed. 2d 80, 78 S.Ct. 99 (1957).

Cardenas filed his complaint in the United States District Court for the Southern District of California. The case was assigned to Judge Napoleon A. Jones, Jr. On July 20, 2000, Ria filed a motion to dismiss in conjunction with a motion to transfer venue to this Court. On October 10, 2000, Judge Jones entered an order granting the motion to transfer venue pursuant to 28 U.S.C. § 1404(a), and denying the motion to dismiss with leave to amend. The plaintiff argues that the "law of the case" doctrine thus precludes revisitation by this Court of the defendant's motion to dismiss.

The "law of the case" doctrine prevents courts from revisiting prior decisions of its own or a coordinate court "in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 817, 108 S.Ct. 2166, 100 L.Ed. 811 (1988). But the doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." Id., citing Messinger v. Arizona, 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912).

Judge Jones denied the motion to dismiss with leave to amend, in an opinion that focused explicitly on jurisdiction and venue issues. Judge Jones did not address the merits of the motion to dismiss. Once Judge Jones determined that this Court was the proper venue for adjudication, the Southern District of California no longer had proper jurisdiction over the motion to dismiss. Therefore, Judge Jones denied the motion to dismiss with leave to amend. This Court finds the refiling of the motion to dismiss in this Court, which has proper jurisdiction, to be a proper

3

amendment. Because Judge Jones did not consider the merits of the motion to dismiss but only examined procedural deficiencies and because Judge Jones recognized that his Court did not have proper jurisdiction over the case, the "law of the case" doctrine allows for this Court's consideration of the motion to dismiss.

Turning to the merits of the motion to dismiss, the plaintiff has failed to allege a proper RICO claim. The plaintiff alleges substantive violation of RICO under 18 U.S.C. § 1962(c), which states, "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

In order to prove a civil violation of RICO, the plaintiff must show (i) that defendant has participated in conduct (ii) of an enterprise (iii) through a pattern (iv) of racketeering activity and (v) that the defendant's actions have proximately caused injury to plaintiff's business or property. Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed. 2d 346 (1985). The plaintiff has not sufficiently alleged the existence of a RICO "enterprise" and, therefore, has not stated a claim under RICO.

RICO defines an "enterprise" as comprising "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The plaintiff alleges an association-in-fact comprised of Ria, Ria Illinois, their United States agents (collection agents) and their Mexican agents (distribution agents). However, the RICO violation must "be perpetuated by a statutory 'person' distinct from the statutory 'enterprise.'" *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 642 n.2 (7th Cir. 1995).

The enterprise must thus exist separately and distinctly from the statutory person committing the RICO violation. The plaintiff alleges that Ria and Ria Illinois combined with the collection and distribution agents are the enterprise, and that Ria and Ria Illinois enhance their abilities to commit continuing wire fraud through association with their agents. Because of this enhancement of the ability to commit the alleged wire fraud, the plaintiff argues that the collection and distribution agents are separate from the alleged RICO "person," defendants Ria and Ria Illinois.

The Seventh Circuit has rejected this distinction. Noting that the courts have excluded the possibility of an employer and its employees constituting a RICO enterprise, Judge Posner explained that RICO should not be applied to a free-standing corporation merely because it does business through agents. He noted "the manufacturer plus its [independently owned] dealers and other agents . . . do not constitute an enterprise within the meaning of the statute." Fitzgerald v. Chrysler Corp., 116 F.3d 225, 228 (7th Cir. 1997). See also Stachon v. United Consumer Club, Inc., 1999 U.S. Dist. LEXIS 16484, 1999 WL 971284 (N.D. Ill. October 21, 1999).

In addition, the legislative purpose of RICO also supports the conclusion that an enterprise cannot consist simply of an employer and its employees or agents. The "prototypical RICO case" occurs when a person attempting to engage in criminal activity gains "control of a previously legitimate firm and uses the firm's resources, contacts, facilities, and appearance of legitimacy to perpetuate more, and less easily discovered, criminal acts than he could do in his own person, that is, without channeling his criminal activities through the enterprise he has taken over." Fitzgerald, 116 F.3d at 227. The plaintiff has made no allegation that Ria's agents are a façade of legitimacy for Ria's alleged criminal organization. Indeed, the plaintiff simply alleges that Ria's business itself is fraudulent, and that Ria's corporation and agents are therefore an enterprise under RICO. Courts

5

have recognized, however, that the enterprise must be "more than an association of individuals or entities conducting the normal affairs of a defendant corporation." Brittingham v. Mobil Corp., 943 F.2d 297, 301 (3d Cir. 1991).

In addition, under RICO, the plaintiff must also allege a pattern of racketeering activity. 18 U.S.C. § 1962(c). This activity must be separate and distinct from the enterprise. United States v. Turkette, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528-29, 69 L.Ed. 2d 246 (1981). The plaintiff has not alleged an enterprise that is distinct from the alleged racketeering activity.

The plaintiff alleges that the very business in which Ria is engaged is the fraudulent act. He alleges contractual relationships between RIA and its agents, or the existence of the ordinary business relationships between them. Because the alleged acts of racketeering are these business dealings conducted according to these contractual relationships, there is no allegation of a separate structure distinct from the alleged predicate acts. A RICO enterprise "must have a structure and goals separate from the predicate acts themselves." United States v. Korando, 29 F.3d 1114, 1117 (7th Cir. 1994). The purpose and structure of the relationship between Ria and Ria Illinois and their agents is the business relationship involved in conducting wire transactions. The conducting of wire transactions is the business, not the front for the illegal activity allegedly taking place within those same wire transactions.

The plaintiff contends that the illegal activity is the nondisclosure of the wholesale conversion rate, and that this scheme was executed through fraudulent wire use. The elements of wire fraud are (i) the formation of a scheme to defraud; (ii) specific intent to deceive or defraud; and (iii) use of interstate or international wires in furtherance of the scheme. 18 U.S.C. § 1343. See also Schreiber Dist. Co. v. Serv-Well Furniture Co., Inc., 806 F.3d 1393, 1400 (9th Cir. 1986). However,

6

in the only published opinion addressing a RICO and fraud claim based upon failure to disclose a foreign exchange rate margin, the district court held that these circumstances failed to show a specific intent to defraud. See Compania Sud-Americana de Vapores, S.A. v. IBJ Schroder Bank & Trust Co., 785 F.Supp. 411, 424-425 (S.D.N.Y. 1992). See also United States v. Brown, 79 F.3d 1550, 1559 (11th Cir. 1996) (holding there is no mail fraud for failure to disclose investment potential or re-sale value of real estate when essential pricing information can be obtained); Blount Fin. Servs. v. Walter E. Heller & Co., 819 F.2d 151, 153 (6th Cir. 1987) (holding there is no RICO claim when alleged misrepresentation could have been checked against public information). See also In re Mexico Money Transfer Litigation, 2000 U.S. Dist. LEXIS 18863, 2000 WL 1889666 (N.D. Ill. December 27, 2000). Because the circumstances alleged by plaintiff do not meet the second element of wire fraud, the RICO claim is deficient.

Finally, to state a claim for RICO conspiracy, a plaintiff must allege facts to support a violation of a substantive RICO provision. Lightning Lube v. Witco Corp., 4 F.3d 1153, 1191 (3d Cir. 1993). Plaintiff argues that, because a conspirator need not be alleged to have actually committed predicate acts, but must simply intend to further an endeavor that, if completed, would satisfy the criminal offense, a substantive violation of 1962(c) need not be alleged properly to properly allege a 1962(d) violation. See Salinas v. United States, 522 U.S. 52, 118 S.Ct. 469, 139 L.Ed. 352 (1997). But the Supreme Court in Salinas simply defined RICO conspiracy as a term of art identical to traditional criminal conspiracy, noting the validity of the common law principle that "so long as they share a common purpose, conspirators are liable for the acts of their co-conspirators." Id. at 63-64. However, because the 1962(c) claim in this case does not allege criminal offenses by an organization that falls under RICO, the 1962(d) claim also fails. Because the Court

7

finds insufficient allegations to support a substantive RICO claim under section 1962(c), the plaintiff's claim under 1962(d) does not survive.

## CONCLUSION

Because the defendants properly filed a timely responsive pleading, plaintiff's motion for default judgment is denied. Because plaintiff has failed to allege a RICO claim under 18 U.S.C. § 1962(c) and 1962(d), defendant's motion to dismiss is granted, and this case is dismissed with prejudice. This order is final and appealable. Because the Court finds the RICO claim insufficient, the California state law claims are dismissed without prejudice for lack of jurisdiction. The case is terminated.

/s/ Wayne R. Andersen
United States District Judge

Dated: May 17, 2001